2006 OK 24

**Lori HARVELL, Individually and on behalf of herself and all others similarly situated, Plaintiff/Appellee,**

v.

**The GOODYEAR TIRE & RUBBER COMPANY, Defendant/Appellant.**

No. 102,128.

Supreme Court of Oklahoma.

April 25, 2006.

As Corrected May 9, 2006 and July 3, 2007.

Harry Scoufos, Thomas W. Condit, Sallisaw, OK, for Appellee.

William K. Orendorff, Sallisaw, OK, and P. Jefferson Ballew, Adrienne E. Dominguez, Dallas, TX, for Appellant.

## KAUGER, J.

¶1 The only issue presented[1] is whether the trial court abused its discretion in certifying a class pursuant to 12 O.S.2001 § 2023.[2] We hold that it did.

1. On October 7, 2005, the Court entered an order directing the appellant, the Goodyear Tire and Rubber Company, to show why the appendix to its brief in chief filed on October 6, 2005, should not be stricken in violation of Oklahoma Supreme Court Rule 1.11, 12 O.S.2001 Ch. 15, App. 1. which provides in pertinent part:

> "... An Appendix to a brief may be filed as an attachment to the brief or as a separate document. An Appendix to a brief on appeal may only include: (1) a copy of the decision from which the appeal is taken; (2) copies of authorities not contained in the National Reporter System; (3) copies of statutes or rules not promulgated in Oklahoma; ..."

On October 18, 2005, the Court deferred consideration of the issue to the decisional stage. Because the appendix contains copies of authorities not contained in the National Reporter System and copies of statutes or rules not promulgated in Oklahoma, it is in compliance with the rule and will not be stricken.

2. Title 12 O.S.2001 § 2023 provides in pertinent part:

> "A. PREREQUISITES TO A CLASS ACTION. One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> 1. The class is so numerous that joinder of all members is impracticable;
> 2. There are questions of law or fact common to the class;
> 3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> 4. The representative parties will fairly and adequately protect the interests of the class.
> B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A are satisfied and in addition:
> 1. The prosecution of separate actions by or against individual members of the class would create a risk of:
> a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
> 2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final

## FACTS

¶ 2 On July 28, 2004, the plaintiff/appellee, Lori Harvell (Harvell/customer) noticed that the check engine light in her car was on. After spotting a Goodyear Auto Service Center (service center) a few blocks away, she pulled into the service center to get her car checked. After performing a diagnostic check on the vehicle, the service center recommended that she replace the spark plugs and told her that her brakes were worn. Rather than have the spark plugs or the brakes replaced at that time, she drove home.

¶ 3 The service center presented the customer with two copies of an invoice. One was an estimate invoice, the other was an actual invoice for the services performed. Although an estimate invoice is typically given to customers before any work is done, it was not given to Harvell before the service center checked her car. The actual invoice itemized the charges as $36.50 for labor, $0.00 for parts, $2.56 for shop supplies for a total of $39.28 which included $.22 for taxes on the $2.56 shop supply charge. The shop supply charge also appeared on the estimate invoice.[3] Both invoices contained an explanation of the shop supply fee at the bottom of the page which provided: "SHOP SUPPLY FEES COVER MISC MATERIALS USED IN SERVICING YOUR VEHICLE THAT DO NOT APPEAR ELSEWHERE ON THIS INVOICE AND FOR PROFIT."

¶ 4 When the customer questioned the cashier about the shop supply fee, she was told not to worry about it, that it was just part of the bill. She asked whether she would get her car back if she failed to pay the $2.56 charge, and was told that she had to pay it. Harvell paid the invoice.

¶ 5 On August 26, 2004, the customer filed a class action lawsuit against the defendant/appellant, the Goodyear Rubber & Tire Company (Goodyear), seeking certification of a national class action of consumers who, in approximately 37 states, had paid Goodyear a shop supply fee since 1998.[4] She alleged that Goodyear was illegally charging a shop supply fee based on 7% of the labor charge, regardless of whether shop supplies were used. She asserted claims for breach of contract, unjust enrichment, and a violation of the Ohio Consumer Sales Practices Act (the Ohio Act).[5]

¶ 6 A hearing for class certification was held on March 29, 2005. On stipulation of the parties, the trial court admitted deposition testimony, affidavits, and exhibits into evidence. The evidentiary materials show, among other things, that the shop supply fee was initiated [6] and tracked from Goodyear's corporate offices in Ohio, but because stores purchased their own supplies, the brand, supplier, and cost of the supplies varied from store to store.

¶ 7 On April 14, 2005, the trial court issued an order granting the customer's motion for class certification. The trial court found that the four requirements of 12 O.S.2001 § 2023 (A): numerosity, commonality, typicality, and representation, were satisfied. It also determined that two of the requirements of

---

injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
  a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,
  b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
  c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and

  d. the difficulties likely to be encountered in the management of a class action...."

3. According to Goodyear, the shop supplies include such things as floor covers, seat and steering wheel covers, rags, small amounts of brake cleaner or fluid, and lubricating grease and other solutions which are immeasurable as a per-vehicle cost.

4. Excluded from the class were transactions occurring in New York, California and Washington, D.C.

5. Ohio Rev.Code Ann. § 1345.01 et seq.

6. Goodyear initially instituted the shop fee as 2% of the costs for parts and labor with a maximum

§ 2023(B) were applicable because there was a predominance of common questions of law or fact, a superiority of class action adjudication, and injunctive relief was appropriate. It also found that Ohio substantive law applied to all three claims.[7] Goodyear appealed, and we retained the cause on June 3, 2005. The briefing cycle was completed on October 18, 2005.

### THE TRIAL COURT ABUSED ITS DISCRETION IN CERTIFYING THE CLASS.

¶ 8 Title 12 O.S.2001 § 2023 requires that four prerequisites for class certification under § 2023(A) and one of the three additional requirements contained in § 2023(B) must be met in order to certify a class.[8] Subsections 1 through 4 of § 2023(A), respectively, require: 1) numerosity of class members; 2) commonality of questions of law or fact; 3) typicality of claims or defenses of the class representatives with the class; and 4) adequacy of representative parties to protect class interests. Subsection 1 through 3 of § 2023(B) requires either: 1) a risk of inconsistent adjudications by separate actions or substantial impairment of non-parties to protect their interests; 2) appropriateness of final injunctive or declaratory relief; or 3) predominance of common questions of law or fact to class members and superiority of class action adjudication.

¶ 9 A trial court's class certification order is reviewed for abuse of discretion.[9] An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling.[10] If the record does not demonstrate that the requisites for class action have been met, the trial court has abused it's discretion.[11]

¶ 10 The party who seeks certification has the burden of proving each of the requisite elements for class action.[12] We take as true all uncontroverted allegations in the instruments in the record and the undenied statements of counsel in the briefs.[13] A trial court is allowed flexibility and discretion to modify, or even set aside, its order of certification if later developments demonstrate a need to do so.[14] Consequently, in the face of a close question as to certification, the Court has held that the pragmatic action is to sustain certification.[15]

¶ 11 To resolve whether the prerequisites for class-certification are met, we need not reach the merits of the claim.[16] Nevertheless, determining whether the trial court applied the correct legal standards when it assessed § 2023's requirements for class certification necessitates identification and review of the core liability issues assert-

charge of $2.00 and over time has increased the fee to 7% with a maximum charge of $20.00.

7. Title 12 O.S.2001 § 2023, see note 2, supra.

8. *Id. Fent v. Oklahoma Natural Gas Co.*, 2001 OK 35, ¶ 12, 27 P.3d 477; *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, ¶ 12, 969 P.2d 337.

9. *Ysbrand v. DaimlerChrysler Corp.*, 2003 OK 17, ¶ 5, 81 P.3d 618 *cert. denied DaimlerChrysler Corp. v. Ysbrand*, 542 U.S. 937, 124 S.Ct. 2907, 159 L.E.2d 812 (2004); *Scoufos v. State Farm Fire & Cas. Co.*, 2001 OK 113, ¶ 1, 41 P.3d 366; *Black Hawk Oil Co., v. Exxon Corp.*, see note 8, supra at ¶ 10; *Shores v. First City Bank Corp.*, 1984 OK 67, ¶ 4, 689 P.2d 299.

10. *Fent v. Oklahoma Natural Gas Co.*, see note 8, supra; *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, 2000 OK 51, ¶ 9, 9 P.3d 683.

11. *Ysbrand v. DaimlerChrysler Corp.*, see note 9, supra.

12. *KMC Leasing, Inc. v. Rockwell–Standard Corp,* see note 10, supra.

13. *Fent v. Oklahoma Natural Gas Co.*, see note 8, supra at ¶ 13; *Shores v. First City Bank Corp.*, see note 9, supra at ¶ 6; *Mattoon v. City of Norman*, 1981 OK 92, ¶ 11, 633 P.2d 735.

14. Title 12 O.S.2001 § 2023 (C)(1) provides:
"As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subsection may be conditional, and may be altered or amended before the decision on the merits."

15. *Black Hawk Oil Co. v. Exxon Corp.*, see note 8, supra; *Perry v. Meek*, 1980 OK 151, ¶ 19, 618 P.2d 934.

16. Inquiry into the merits of the action is inappropriate when the court is deciding whether a class should be certified. *Black Hawk Oil Co.*, see note 8, supra at ¶ 18.

ed by the class.[17]

¶ 12 The customer argues that because she proved that the four elements required pursuant to 12 O.S. § 2023 (A) [numerosity, commonality, typicality, and representation] and that two of the three standards of § 2023(B) [the appropriateness of injunctive or declaratory relief or predominance of common questions of law or fact and the superiority of class action adjudication] were met, the trial court's certification order must be affirmed. The primary focus of Goodyear's challenge to the trial court's certification is that certification must fail because Harvell did not satisfy the requirements of either appropriateness of injunctive or declaratory relief or predominance of common questions of law or fact over questions affecting only individual members. Goodyear also argues that Ohio law is inapplicable to the claims. We agree with Goodyear's challenges.

¶ 13 A factor weighing heavily in this case is the geographic dispersion of the class members and the consequent, potential applicability of the law of multiple jurisdictions. This factor is important because we have previously held that where the substantive law of multiple jurisdictions may apply, common issues of law or fact generally do not predominate as required by 12 O.S.2001 § 2023 (B)(3) [18] and class certification should be defeated.[19]

### i. Breach of Contract Claim

■ ¶ 14 The trial court analyzed the applicability of the law of multiple jurisdictions in terms of the most significant relationship test of the Restatement (Second) Conflicts of Law §§ 6 and 188 (1971).[20] However, in Oklahoma,[21] the established choice of law rule in contract actions known as *lex loci contractus* is that, unless the contract terms

17. See, *Scoufos v. State Farm Fire & Cas. Co.,* note 9, supra; *KMC Leasing, Inc. v. Rockwell–Standard Corp.,* note 10, supra.

18. Title 12 O.S.2001 § 2023 (B), see note 2, supra.

19. *KMC Leasing, Inc. v. Rockwell–Standard Corp.,* see note 10, supra at ¶ 20. See also, *Ysbrand v. DaimlerChrysler Corp,* note 9, supra [Analyzing choice of law issues to determine common issue of law.].

20. The Restatement (Second) Conflict of Laws § 6 (1971) provides:

"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the established choice of law rule for the more modern 'significant relationship' test."
The Restatement (Second) Conflict of Laws § 188 (1971) provides in pertinent part:

"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles state in § 6.
(2) In the absence of an effective choice of law by the parties, the contracts to be taken into account in applying the principles of' § 6 to determine the law applicable to an issue include:
(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
These contracts are to be evaluated according to their relative importance with respect to the particular issue.
(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–99 and 203."

21. This suit was brought in Oklahoma; therefore, Oklahoma choice of law principles must be applied. *Ysbrand v. DaimlerChrysler Corp.,* see note 9, supra at ¶ 11. *See also, In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1015 (7th Cir.2002) *cert. denied Gustafson v. Bridgestone/Firestone, Inc.,* 537 U.S. 1105, 123 S.Ct. 870, 154 L.Ed.2d 774 (2003)[Because plaintiffs' claims rest on state law, the choice-of-law rules come from the state in which the federal court sits.].

provide otherwise, the nature, validity, and interpretation of a contract are governed by the law where the contract was made.[22] Although variations from this rule have been applied in the unique context of motor vehicle insurance policies with contract terms contrary to law or the public policy of the state where enforcement is sought,[23] and contracts involving the sale of goods under the Uniform Commercial Code [24]—neither of the exceptions are involved here.[25]

■■■ ¶ 15 The place of performance of any alleged contract for each person charged a supply fee for the service of vehicles is the state in which the vehicle was serviced.[26] Consequently, the law of each of the 37 states involved governs the breach of contract claims. While the elements for breach of contract may be substantially similar in each state, the trial court would be required to apply each state's contracts regime, in-

cluding applicable defenses and divergent statutes of limitation.[27]

¶ 16 Goodyear's standard procedure requires that each customer receive and sign an estimate, notifying each customer that some or all of the shop supply fee is for profit. The customer ordinarily signs the estimate before any work is done. Apparently, Harvell is not the typical customer because she alleges that she was not given an estimate until after the work was completed. The existence of a contract and a determination of what the material terms of the contract were differ with each class member's interaction with each service center. These individualized determinations, coupled with the application of the law of 37 states, precludes a finding of predominance and defeats the purpose of certifying a class. The trial court would be overwhelmed with the burden

---

**22.** *Bohannan v. Allstate Ins. Co.,* 1991 OK 64, ¶ 30, 820 P.2d 787; *Telex Corp. v. Hamilton,* 1978 OK 32, ¶ 8, 576 P.2d 767; *Paclawski v. Bristol Laboratories, Inc.,* 1967 OK 21, ¶ 5, 425 P.2d 452; *Aetna Cas. & Sur. Co. of Hartford, Conn. v. Gentry,* 1942 OK 366, ¶ 32, 132 P.2d 326; *Clark v. First National Bank of Marseilles,* 1916 OK 404, 59 Okla 2, 157 P. 96. Title 15 O.S.2001 § 162 provides:

"A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

**23.** *Bohannan v. Allstate Ins. Co.,* see note 22, supra [The choice of law rule for motor vehicle insurance cases which involve conflicting state law is that the law of the state in which the contract was made applies unless those provisions are contrary to the public policy of Oklahoma, or unless the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter of the parties.].

**24.** *Ysbrand v. DaimlerChrysler Corp.,* see note 9, supra at ¶¶ 12–13.

**25.** When a transaction relates primarily to services, an incidental sale of merchandise does not make it a contract for the sale of goods governed by the Uniform Commercial Code. 12A O.S.2001 § 2–102 [Recognizing application to transactions in goods.]. Other states apply a predominance or dominance test to determine whether the transaction is primarily for services or the sale of goods to determine the applicability of the Uniform Commercial Code. See, for example, *Tar-*

*rant County Hosp. Dist. v. GE Automotive Services, Inc.,* 156 S.W.3d 885, 892 (Tx.App.2005); *Lohman v. Wagner,* 160 Md.App. 122, 862 A.2d 1042, 1046 (2004); *Hensley v. Ray's Motor Co.,* 158 N.C.App. 261, 580 S.E.2d 721, 724 (2003); *Heart of Texas Dodge, Inc. v. Star Coach,* 255 Ga.App. 801, 567 S.E.2d 61 (2002). Here, the predominate purpose of the customer's alleged contract with the service center was for repair of her vehicle a provision of services, rather than sale of goods. See also, *McCool v. Hoover Equipment Co.,* 1966 OK 95, ¶ 9, 415 P.2d 954 [Where service predominates, contract is for work or labor and materials and not sales.].

**26.** Even if we were to apply a significant relationship test and weigh through the factors of the Restatement (Second) of Conflicts §§ 6 and 188, see note 20, supra, we are not convinced that Ohio has more significant relationship between the contracting parties than the state where the services were performed and the contract was allegedly formed and breached.

**27.** *See* Miss.Code Ann. § 15–1–49(1) [Default three year statute of limitations for all unprescribed offenses, including breach of contract.]; Tex. Civ. Prac. & Rem.Code Ann. § 16.051 [Four year statute of limitations for breach of contract.]; 12 O.S.2001 § 95 (a) [Five year limitation for written contracts; three year limitation for express or implied oral contracts.]; Ga.Code Ann. § 9–3–24 [Six year statute of limitations for written contracts.]; Mont.Code Ann. § 27–2–202 [Eight year statute of limitations for written contracts; three year statute of limitations for oral contracts.] Iowa Code Ann. § 614.1(5)[Ten year statute of limitations for written contracts.].

of an unmanageable class.[28] Consequently, trial court abused its discretion in certifying the breach of contract claim.

### ii. Unjust Enrichment Claim

¶ 17 To determine which state's law governs, Harvell argues that the most significant relationship test of Restatement (Second) of Conflicts § 148 (1971),[29] which we have previously applied to fraud/false representations and misrepresentation claims,[30] also applies to the unjust enrichment claims. She insists that because Ohio has the most significant relationship to the transactions of all of the class members, Ohio law clearly controls.[31] Goodyear contends that this cause is governed by the law of each state in which a service was performed.[32]

¶ 18 Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where it is inequitable; i.e. the party has money in its hands that, in equity and good conscience, it should not be allowed to retain.[33] Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment.[34]

¶ 19 In the present case, regardless of whether we apply a significant relationship analysis or whether the principle of *lex loci*

---

28. Title 12 O.S.2001 § 2023 (B)(3), see note 2, supra; *Ysbrand v. DaimlerChrysler Corp.*, see note 9, supra. See generally, *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, note 10, supra.

29. The Restatement (Second) Conflict of Law § 148 (1971) provides:

    "(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under te principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied. (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
    (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
    (b) the place where the plaintiff received the representations,
    (c) the place where the defendant made the representations,
    (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
    (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
    (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant."

    See also § 221 of the Restatement (Second) Conflicts of Law (1971), which according to the comments, applies to unjust enrichment claims which are based neither on contract nor on tort. Neither party argues it applies to the present cause.

30. *Ysbrand v. DaimlerChrysler Corp.*, see note 9, supra.

31. Harvell contends that Ohio law should govern the unjust enrichment claims for the same reason that she argues the breach of contracts claims should be governed by Ohio law—because Ohio has the most significant relationship. Even if we were to apply a significant relationship test and weigh through the factors of the Restatement (Second) of Conflicts §§ 148 or 221, see note 29, supra, the only connection Ohio has is that: 1) Goodyear is headquartered in Ohio; 2) the decision to charge the fee in question originated in Ohio; 3) the computer system for each store stems in Ohio; and 4) part or all of the fee was ultimately transmitted to Ohio. We are not convinced that these factors are enough to point away from the law of the state where the service was provided.

32. Neither party relies on the Restatement (First) of Conflicts of Law § 453 (1934) which provides:

    "When a person is alleged to have been unjustly enriched, the law of the place of enrichment determines whether he is under a duty to repay the amount by which he has been enriched."

33. *French Energy, Inc. v. Alexander*, 1991 OK 106, ¶ 11, 818 P.2d 1234. One is not unjustly enriched, however, by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution. *McBride v. Bridges*, 1950 OK 25, ¶ 8, 215 P.2d 830.

34. *Robertson v. Maney*, 1946 OK 59, ¶ 7, 166 P.2d 106.

*contractus,* the result is the same. Any representations upon which a customer relied and any enrichment received occurred in the state where the services were rendered. The unjust enrichment sought by Harvell is an equitable remedy aimed at recovering unspecified amounts of money which Goodyear received, unrelated to the actual shop supplies used.

¶ 20 Any enrichment related to the services rendered by Goodyear occurred in the state in which the alleged contract for service was signed and performed. Therefore, the law of each state where the services were rendered governs any claim for unjust enrichment. The elements of unjust enrichment claims differ markedly from state to state.[35] In addition to the differences in these basic criteria, state considerations of such claims differ over issues of misconduct,[36] availability of adequate remedies at law,[37] and the effect of the existence of an express contract governing the transaction.[38]

¶ 21 Additionally, for each class member, a decision as to whether unjust enrichment is applicable will depend heavily on the services rendered, the amount of supply fee charged, the supplies used (if any), the cost of the shop supplies, and whether a customer agreed to pay the cost, even if it might have been purely for profit. The success of a claim for unjust enrichment depends on the particular facts and circumstances of each case and hinges on whether a customer actually received few or no miscellaneous supplies. These factual particularities make class certification imprudent because the claims and defenses of each class member involve a specific finding of cost, profit, and equitable unfairness which necessarily requires individualized findings of fact for each member of the class. For all of these reasons, there is a lack of predominance of common legal and factual issues and the trial court abused its discretion in certifying the claim for unjust enrichment which fails to meet the statutory requirement of predominance under 12 O.S. 2001 § 2023 (B)(3).[39]

35. *Ray Reilly's Tire Mart, Inc. v. F.P. Elnicki, Inc.,* 149 Vt. 37, 537 A.2d 994, 995 (1987) and *Bouchard v. Price,* 694 A.2d 670, 673 (R.I.1997) [Requiring inequitable retention of a benefit]; *Lectrodryer v. Seoulbank,* 91 Cal.Rptr.2d 881, 77 Cal.App.4th 723, 726 (2000) [Requiring the unjust retention of a benefit at the expense of another.]; *Amoco Production Co., v. EM Nominee Partnership Co.,* 2 P.3d 534, 541–42 (Wyo.2000) [Requiring constructive notice of intent to be paid.].

36. *DCB Construction Co., Inc. v. Central City Development Co.,* 965 P.2d 115, 119 (Colo.1998) [Holding that unjust enrichment requires a showing of improper, deceitful, or misleading conduct]; *Schock v. Nash,* 732 A.2d 217, 232 (Del. 1999) [Allowing for restitution, even when defendant is not a wrongdoer.]; *Anderson v. DeLisle,* 352 N.W.2d 794, 796 (Minn.App.1984)[Unjust enrichment claim allowable in situations where enrichment was morally wrong.].

37. *Community Guardian Bank v. Hamlin,* 182 Ariz. 627, 898 P.2d 1005,1008 (Ariz.App.1995)[Holding that unjust enrichment requires absence of a remedy provided by law.]; *Independent Voters of Illinois v. Illinois Commerce Com'n,* 117 Ill.2d 90, 109 Ill.Dec. 782, 510 N.E.2d 850, 854 (1987)[Holding that restitution predicated on unjust enrichment "usually" requires that no adequate legal remedy exist.]; *Williams v. Bear Stearns & Co.,* 725 So.2d 397, 400 (Fla.App.1998) [An available legal remedy is not sufficient to bar restitution claims.].

38. *Adelman v. Christy,* 90 F.Supp.2d 1034, 1045 (D.Ariz.2000)[The existence of contract governing the dispute is not sufficient to invalidate an unjust enrichment theory of recovery.]; *Williams v. Bear Stearns & Co.,* see note 37, supra [Unjust enrichment claim fails if an express contract already exists.]; *Mitford v. de Lasala,* 666 P.2d 1000, 1006, n. 1 (Alaska 1983) [Unjust enrichment is precluded by the existence of an actual contract.]; *Cole v. Benavides,* 481 F.2d 559, 561 (5th Cir.1973) [Proof of an express contract covering the services precludes relief in unjust enrichment.]; *Lemoge v. County of San Mateo,* 46 Cal.2d 659, 297 P.2d 638, 664 (1956)[Formal contract, the meaning of which is understood by both parties, precludes equitable relief.]; *Keneally v. Orgain,* 186 Mont. 1, 606 P.2d 127, 129 (1980) [Plaintiffs may not allege an implied contract while proving an express contract.]; *Polverari v. Peatt,* 29 Conn.App. 191, 614 A.2d 484, 489 (1992) [Awards for unjust enrichment are allowable when not inconsistent with express contracts.].

39. Title 12 O.S.2001 § 2023 (B)(3), see note 2, supra. At least one court has recognized that because unjust enrichment claims are fact specific to each case, they are unsuitable for class action treatment altogether. *Avis Rent A Car Systems, Inc., v. Heilman,* 876 So.2d 1111, 1123 (Ala.2003).

### iii. Ohio Consumer Sales Practices Act Claims

¶ 22 The consumer alleges that Goodyear violated the Ohio Consumer Sales Practices Act (the Act).[40] Goodyear argues that the trial court erred in certifying a class action based on the alleged violation of the Act because the Act is inapplicable to the class.

¶ 23 The Act generally prohibits unfair, unconscionable, and deceptive sales.[41] Section 1345.04 of the Act imposes liability only when an offending act or practice takes place within the state of Ohio.[42] Courts have generally determined that the focus of the inquiry concerning application of such an Act to out-of-state consumers is whether the offending consumer transaction occurred with the state.[43]

¶ 24 While Goodyear may have developed the shop supply fees from its corporate offices in Ohio, in our view any unfair, deceptive or unconscionable conduct toward a consumer occurred where the transaction occurred—when a customer brought an automobile in for service to a service center and was charged a shop supply fee. Ac-

cordingly, the Ohio Act is inapplicable to transactions occurring in states other than Ohio.

### iv. Appropriateness of Final Injunctive or Declaratory Relief.

¶ 25 In addition to finding predominance, the trial court determined that the class should be certified under 12 O.S. § 2023 (B)(2). Section (B)(2) allows certification when the class representative can show that the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole.[44] Under this section, the customer argues that injunctive or declaratory relief is an appropriate basis for certifying the class. Goodyear insists that because all of the asserted claims seek predominately monetary damages, subsection (B)(2) is inapplicable.

¶ 26 We have not previously addressed a class certification under § 2023(B)(2). However, Oklahoma's class action scheme closely parallels Rule 23, of the Federal Rules of Civil Procedure and we find it illustrative.[45]

40. Ohio Rev.Code § 1345.01 *et seq.*

41. See generally, Ohio Rev.Code § 1345.01 et seq.

42. Ohio Rev.Code § 1345.04 provides:
   "The court of common pleas, and municipal or county courts within their respective monetary jurisdiction have jurisdiction over any supplier with respect to any act or practice in this state covered by sections 1345.01 to 1345.13 of the Revised Code, or with respect to any claim arising from a consumer transaction subject to such sections."

43. *Clark v. TAP Pharmaceutical Products*, 343 Ill.App.3d 538, 278 Ill.Dec. 276, 798 N.E.2d 123, 129 (2003) [Out-of-state consumer may pursue an action for consumer fraud if deceptive acts and practices took place within the state.]; *Oce Printing Systems USA, Inc. v. Mailers Data Services, Inc.*, 760 So.2d 1037, 1042 (Fla.Dist.Ct. App.2000) [Certification of Nationwide class improper because Deceptive and Unfair Trade Act applies to in-state consumers.]; *Delahunt v. Cytodyne Technologies*, 241 F.SupP.2d 827, 839 (S.D.Ohio 2003); *Shorter v. Champion Home Builders Co.*, 776 F.Supp. 333, 338–39 (N.D.Ohio 1991). See also, *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F.Supp. 491, 504 (D.N.H. 1996); *Brown v. Market Dev. Inc.*, 41 Ohio Misc. 57, 322 N.E.2d 367, 369 (1974) noting that irre-

spective of the locus of the manufacturer or supplier, it is the activity that is determinative. But see, *Steed Realty v. Oveisi*, 823 S.W.2d 195, 198 (Tenn.App.1991) [Consumer Protection Act applies to any consumer as long as defendant transacts business within the state.].

44. Title 12 O.S.2001 § 2023 (B)(2), see note 2, supra.

45. Federal Rules of Civil Procedure, Rule 23(b) provides in pertinent part:
   "... An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   ...
   (2) the party opposing the class has acted or refused to act on the grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or ..."
   We have previously considered the federal rule when interpreting our similar statute. *Dewey v. State ex rel. Oklahoma Firefighters Pension & Retirement System*, 2001 OK 40, ¶ 18, 28 P.3d 539; *Mattoon v. City of Norman*, see note 13, supra at ¶ 8; *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, see note 10, supra; *Black Hawk Oil Co. v. Exxon Corp.*, see note 8, supra at ¶ 11;

Under Rule 23(b)(2) of the Federal Rules of Civil Procedure [46] the injunctive or declaratory relief must be the primary remedy requested for class members,[47] and the defendant's behavior must be generally applicable to the class as a whole.[48] The award of some monetary damages is not precluded by the requirement, provided that monetary relief is secondary or incidental to the primary injunctive or declaratory relief sought.[49]

¶ 27 To determine certification under subsection (2), the court considers not merely the relief sought by the plaintiffs, but whether the crux of the action is for monetary damages.[50] Certification is improper if the merits of the claim turn on the defendant's individual dealings with each plaintiff.[51] Certification is generally reserved for cases in which broad, class-wide injunctive or declaratory relief is necessary to address a group-wide injury such as in discrimination or civil rights suits, even though some damages may also be awarded.[52]

¶ 28 The present action is not similar to those types of actions. Even though Harvell also seeks an injunction against the continued practice of charging the fees, the crux of her class action is compensation sought for the allegedly fraudulently charged shop supply fees.[53] This case focuses squarely on a

*Shores v. First City Bank Corp.*, see note 9, supra at ¶ 5.

**46.** Federal Rules of Civil Procedure, Rule 23(b)(2), see note 45, supra.

**47.** Federal Rules of Civil Procedure, Rule 23(b)(2), see note 45, supra; *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1121 (8th Cir.2005); *Molski v. Gleich*, 318 F.3d 937, 947 (9th Cir.2003); *Coleman v. General Motors Acceptance*, 296 F.3d 443, 446 (6th Cir.2002); *Stewart v. Abraham*, 275 F.3d 220, 228 (3rd Cir.2001) *cert. denied* 536 U.S. 958, 122 S.Ct. 2661, 153 L.Ed.2d 836 (2002); *In re Mercedes–Benz Antitrust Litigation*, 213 F.R.D. 180, 186 (D.N.J.2003); *United States v. Trucking Employers, Inc.*, 75 F.R.D. 682, 692 (D.D.C.1977). See, *In re School Asbestos Litigation*, 789 F.2d 996, 1008 (3rd Cir.1986) *cert. denied Celotex v. School Dist. of Lancaster*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986) [An action for money damages may not be maintained as a Rule 23(b)(2) class action.].

**48.** Federal Rules of Civil Procedure, Rule 23(b)(2), see note 45, supra; *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir.2000); *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 209 F.R.D. 323, 341 (S.D.N.Y.2002).

**49.** *Cooper v. Southern Co.*, 390 F.3d 695, 720 (11th Cir.2004) *cert. denied* 546 U.S. 960, 126 S.Ct. 478, 163 L.Ed.2d 363 (2005); *Molski v. Gleich*, see note 47, supra; *Coleman v. General Motors Acceptance*, see note 47, supra; *In re Mercedes–Benz Antitrust Litigation*, see note 47, supra; *Colorado Cross–Disability Coalition v. Taco Bell Corp.*, 184 F.R.D. 354, 361 (D.Colo.1999); *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 117 (D.Kan.1995).

**50.** *Heartland Communications, Inc. v. Sprint Corp.*, see note 49, supra. See, *Molski v. Gleich*, note 47, supra [Focus is on the intent of plaintiffs in bringing the suit.]; *In re Mercedes–Benz Antitrust Litigation*, note 47, supra [Assessing the "realities of the litigation", the focus of the cause was on money damages.]; *In re School Asbestos Litigation* note 47, supra [Despite plaintiff's ingenuity, claims are essentially for damages.].

**51.** *Bolin v. Sears, Roebuck & Co.*, see note 48, supra.

**52.** *Molski v. Gleich*, see note 47, supra; *Robinson v. Metro–North Commuter Railroad Co.*, 267 F.3d 147, 162 (2nd Cir.2001) *cert. denied* 535 U.S. 951, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002); *Stewart v. Abraham*, see note 47, supra; *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, see note 48, supra; *Kleiner v. First National Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D.Ga.1983); *McCray v. Standard Oil Co.*, 76 F.R.D. 490, 500 (N.D.Ill.1977). See, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997) [Noting civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of Rule 23(b)(2) certifications.]; *In re St. Jude Medical, Inc.*, see note 48, supra [Recognizing injuries remedied through (b)(2) actions are really group as opposed to individual injuries and class members are generally bound together by a significant common trait such as race or gender.]; *Lemon v. International Union of Operating Engineers*, 216 F.3d 577, 580 (7th Cir.2000) [23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogenous, not individual differences among members.]; *Marcus v. Kansas Dept. of Revenue*, 206 F.R.D. 509, 514 (D.Kan.2002) [Certification met for class comprised of purchasers of disabled parking cards who alleged Department of Motor Vehicles violated the Americans with Disabilities Act by charging fees.].

**53.** For example, of Harvell's three asserted claims, the only one which even mentions an injunction is the violation of the Ohio Consumer Sales Practices Act, but she also seeks compensatory and statutory damages under it. The customer seeks compensatory damages under the breach of contract theory in an amount equal to

claim for compensatory money damages. A determination of the damages would require individualized determinations for each class member of the fees charged compared with the services rendered, to determine whether the fees did in fact correlate to the supplies used. Accordingly, certification pursuant to § 2023(B)(2) is also an abuse of discretion.

## CONCLUSION

¶ 29 A trial court's class certification order is reviewed for abuse of discretion.[54] An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling.[55] If the record does not demonstrate that the requisites for class action have been met, the trial court has abused it's discretion.[56]

¶ 30 The trial court certified a class action on a common law breach of contract claim, a common law claim of unjust enrichment and a violation of the Ohio Consumer Sales Practices Act, finding that the requirements of numerosity, commonality, typicality, and representation as well as two alternative requirements of appropriateness of injunctive or declaratory relief or predominance of common questions of law or fact and superiority of class action adjudication had been met. We have determined that neither of the predominance requirements or the alternative requirements of appropriateness of injunctive or declaratory relief were satisfied and that

the Ohio Act is inapplicable. Accordingly, the trial court abused its discretion in certifying the class action.

**TRIAL COURT REVERSED; CAUSE REMANDED.**

¶ 31 WATT, C.J., WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA, KAUGER, and TAYLOR, JJ.—Concur.

¶ 32 EDMONDSON, J., and COLBERT, J., Concur in Part and Dissent in Part.

EDMONDSON, V.C.J., Concurring in Part and Dissenting in Part and joined by COLBERT, J.

¶ 1 I dissent to some extent from the Court's opinion for three reasons. The Court misapplies the class action requirements for typicality and predominance. Secondly, the Court states that contract law of thirty-seven jurisdictions applies, but then fails to follow through and apply the law of thirty-seven jurisdictions to determine whether a class action is appropriate. Finally, the plaintiff has a Due Process right to an opportunity to show the facts and law from the thirty-seven jurisdictions that would support the creation of a class action, and the Court impermissibly forecloses this opportunity.

¶ 2 Under Title 12 of the Oklahoma Statutes, a class may be certified when it satisfies the four requirements of § 2023(A) and one of the requirements of § 2023(B).[1] *Bur-*

---

the shop supplies fees paid, and refund of the illegal profits and wrongful fees to the class under her unjustment enrichment theory. Here, a determination of damages would require individualized determinations of whether the shop fees did in fact correlate to the supplies used. In any class action in which both injunctive and monetary relief are sought, where the determination of damages are inherently and individualized nature, class action status is inappropriate. *Robinson v. Metro–North Commuter Railroad Co.*, see note 52, supra. See, *Bolin v. Sears, Roebuck & Co.*, note 48, supra [Certification is improper if the merits of the claims turn on the defendant's individual dealings with each plaintiff.]; *Hoffman v. Honda of America Mfg., Inc.*, 191 F.R.D. 530, 533 (S.D.Ohio 1999) [Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case, nor should it entail individualized determinations.].

**54.** *Ysbrand v. DaimlerChrysler Corp.*, see note 9, supra; *Scoufos v. State Farm Fire & Cas. Co.*, see note 9, supra; *Black Hawk Oil Co. v. Exxon Corp.*, see note 8, supra; *Shores v. First City Bank Corp.*, see note 9, supra.

**55.** *Fent v. Oklahoma Natural Gas Co.*, see note 8, supra; *KMC Leasing, Inc., v. Rockwell–Standard Corp.*, see note 10, supra.

**56.** *Ysbrand v. DaimlerChrysler Corp.*, see note 9, supra.

**1.** Title 12 O.S.2001 § 2023 provides in pertinent part:
"A. PREREQUISITES TO A CLASS ACTION.
One or more members of a class may sue or be sued as representative parties on behalf of all only if:
1. The class is so numerous that joinder of all members is impracticable;

*gess v. Farmers Ins. Co., Inc.*, 2006 OK 66, ¶ 10, 151 P.3d 92, 98. Section 2023(A) requirements are: (1) numerosity of class members, and (2) commonality of questions of fact or law, and (3) typicality of claims or defenses of representatives within the class, and (4) adequacy of representative parties to fairly protect class members. Section 2023(B) alternate requirements are: (1) a risk of inconsistent adjudications by separate actions or substantial impairment of non-parties to protect their interests, or (2) appropriateness of final injunctive or declaratory relief, or (3) predominance of common questions of law or fact to class members and superiority of class action adjudication.

¶ 3 Goodyear points to Harvell's allegation that she was not provided with an estimate. Goodyear argues that this allegation shows that each putative class member's interaction

with a Goodyear service center must be determined for the purpose of showing the terms of each contract, and that such destroys the typicality of the class. I disagree.

¶ 4 Federal courts have explained that the typicality requirement of Federal Rule 23,[2] our § 2023(A)(3), means that the "class representative and the putative class members 'possess the same interest and suffer the same injury.' "[3] The focus is on defendant's behavior and whether plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of the other class members.[4] Typicality "does not require that all putative class members share identical claims. Indeed, so long as 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences.' "[5] If the

2. There are questions of law or fact common to the class;
3. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4. The representative parties will fairly and adequately protect the interests of the class.
B. CLASS ACTIONS MAINTAINABLE. An action may be maintained as a class action if the prerequisites of subsection A are satisfied and in addition:
1. The prosecution of separate actions by or against individual members of the class would create a risk of:
a. inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
b. adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
2. The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
3. The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
a. the interest of members of the class in individually controlling the prosecution or defense of separate actions,

b. the extent and nature of any litigation concerning the controversy already commenced by or against members of the class,
c. the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and
d. the difficulties likely to be encountered in the management of a class action...."

2. Since Oklahoma's class action statute, § 2023, closely parallels Rule 23 of the Federal Rules of Civil Procedure, the Court may look to federal authority for guidance regarding the rationale of comparable provisions in § 2023. *KMC Leasing, Inc. v. Rockwell–Standard Corp.*, 2000 OK 51, ¶ 9, 9 P.3d 683, 688.

3. *Collins v. International Dairy Queen, Inc.*, 168 F.R.D. 668, 674, (M.D.Ga.1996), modified on other grounds, 169 F.R.D. 690 (M.D.Ga.1997), and quoting, *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982).

4. *Collins v. International Dairy Queen, Inc.*, 168 F.R.D. 668, 674, (M.D.Ga.1996), (the focus is on defendant's behavior or conduct), quoting, *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 407 (D.N.J.1990).

5. *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 184, (3rd Cir.2001) quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183–184 (3rd Cir.2001). *See also Zeno v. Ford Motor Co., Inc.*, 238 F.R.D. 173, 186 (W.D.Pa.2006) ("Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims"); *Collins*

claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988). Stated another way, "Factual differences in the claims of the class members should not result in a denial of class certification where common questions of law exist" because such differences do not defeat the sufficiency of the typicality and commonality presented by the common questions of law or fact possessed by the class. *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982).

¶ 5 A class representative must possess the same interest and suffer the same injury as the putative class members. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Harvell claims that Goodyear made a contractual misrepresentation to all members of the putative class. Where the claims of the plaintiff and the putative class members all arise from the same alleged misrepresentations by the defendant, the claims of the plaintiff are typical of those of the class.[6] Different factual circumstances may exists among putative class members, but such differences do not defeat typicality when the claims of the class representative and the putative class members are based upon the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d at 676; *Milonas v. Williams*, 691 F.2d at 938.

¶ 6 Harvell's claim distinguishes between Goodyear's alleged practice of itemizing the shop fee in estimates/work orders used in California, New York, and Washington D.C. and its practice in other jurisdictions where the estimates/work orders show an agreement to pay a fee for the miscellaneous materials used when servicing a vehicle. Harvell's claim distinguishes between the former, where she says "there would be no deceptive practice and no breach of contract" and the latter jurisdictions where itemization did not occur. The putative class is based upon the same alleged misrepresentation to all members of the class. Harvell's claim based upon the written estimates/work orders does not require the trial court to make individualized determinations of the agreements between Goodyear and each of its customers.

¶ 7 Goodyear also appears to argue that the alleged misrepresentations did not occur to all putative class members as a matter of law, and that Harvell's claim is thus atypical. The essence of Goodyear's argument is that upon application of the various states' laws to the claims of the various putative class members, no claim may exist as a matter of substantive contract law. In other words, those customers who were provided with a pre-work estimate do not have, as a matter of law, a cause of action; but, if they do, it is different from that possessed by Harvell.

¶ 8 A court does not determine the merits of a plaintiff's claim when deciding whether the claim should proceed as a class action.[7] In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), the High Court stated:

> In short, we agree with Judge Wisdom's conclusion in *Miller v. Mackey International*, 452 F.2d 424 (5th Cir.1971), where the court rejected a preliminary inquiry into the merits of a proposed class action:
>
> 'In determining the propriety of a class action, **the question is not whether the plaintiff or plaintiffs have stated a**

---

*v. International Dairy Queen, Inc.*, 168 F.R.D. 668, 674, (M.D.Ga.1996) (varying fact patterns do not defeat typicality) quoting *In re Domestic Air Transportation Antitrust Litigation*, 137 F.R.D. 677, 698 (N.D.Ga.1991) quoting 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1764 (1986) citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984), *cert. denied*, 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985).

**6.** *Johnston v. HBO Film Management, Inc.*, 265 F.3d 178, 185, (3rd Cir.2001); *In re Polaroid Erisa Litigation*, 240 F.R.D. 65, 76 (S.D.N.Y.

2006) (typicality where alleged misrepresentations were made to members of putative class). *See also Zeno v. Ford Motor Co., Inc.*, 238 F.R.D. 173, 186 (W.D.Pa.2006) ("Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims").

**7.** *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Black Hawk Oil Co. v. Exxon Corp.*, 1998 OK 70, ¶ 18, 969 P.2d 337, 343.

cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' *Id.* at 427. *Eisen,* 417 U.S. 156, at 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (emphasis added).

Goodyear attempts to make class certification depend upon a 12 O.S.2001 § 2012 (B)(6)[8] analysis, contending Harvell's claim is atypical legally because a claim from pre-service estimate customers fails to state a claim upon which relief can be granted. A class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, at 160, 102 S.Ct. 2364, 72 L.Ed.2d 740. However, *Eisen* indicates that class certification does not depend upon an analysis of whether a plaintiff's claim states a cause of action.[9] Additionally, this Court does not usually make first-instance determinations of disputed questions of law on appeal.[10] To the extent that Goodyear's attack on typicality is an attack on the merits of Harvell's cause of action, such is improper for review of a class certification order.

¶ 9 The Court's opinion states the following, crucial to its analysis: .

> The customer ordinarily signs the estimate before any work is done. Apparently, Harvell is not the typical customer because she alleges that she was not given an estimate until after the work was completed. The existence of a contract and a determination of what the material terms of the contract were differ with each class member's interaction with each service center. These individualized determinations, coupled with the application of the law of 37 states, precludes a finding of predominance and defeats the purpose of certifying a class. The trial court would

be overwhelmed with the burden of an unmanageable class.

2006 OK 24, at ¶ 16, 164 P.3d 1028 note omitted.

Typicality is not based upon *identical facts.* Typicality is a legal conclusion that assesses the materiality of facts in the context of the particular cause(s) of action raised by the putative class. To reach the conclusion that Harvell's cause of action is not typical, the Court must identify the elements of the particular cause of action at issue by applying the applicable substantive law of contract. The Court does not do so in its opinion.

¶ 10 The Court says that Harvell's claim or cause of action is different because some customers received a pre-work estimate. Why? What jurisdiction's substantive law of contract is the Court applying in making this legal conclusion? The Court is clear that it is not applying the law of thirty-seven jurisdictions. But if the law of thirty-seven jurisdictions is not applied, how can the Court conclude that the fact of pre-work estimates is material to the cause of action by the members of the putative class residing outside Oklahoma? Their claims, as the Court holds, are to be measured by the substantive law of the jurisdictions they reside in, law the Court steadfastly refuses to apply.

¶ 11 In support of its typicality conclusion, the Court cites the class action statute, 12 O.S.2001 § 2023 (B)(3), *Ysbrand v. Daimler-Chrysler Corp.,* 2003 OK 17, 81 P.3d 618 *cert. denied,* 542 U.S. 937, 124 S.Ct. 2907, 159 L.E.2d 812 (2004), and *KMC Leasing, Inc. v. Rockwell–Standard Corp.,* 2000 OK 51, 9 P.3d 683. None of these support the Court's conclusion. The statutory cite refers to the requirements of typicality. Here the issue is

---

**8.** The terms of 12 O.S.2001 § 2012 (B) provide in pertinent part: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * 6. Failure to state a claim upon which relief can be granted;"

**9.** *See also Shook v. El Paso County,* 386 F.3d 963, 971 (10th Cir.2004), *cert. denied,* 544 U.S. 978, 125 S.Ct. 1869, 161 L.Ed.2d 729 (2005); *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir.1982).

**10.** *Oklahoma Public Employees Ass'n v. Oklahoma Dept. of Central Services,* 2002 OK 71, n. 3, 55 P.3d 1072, 1077, *Martin v. Johnson,* 1998 OK 127, ¶ 34, 975 P.2d 889, 897; *YWCA v. Melson,* 1997 OK 81, n. 1, 944 P.2d 304, 306.

not the meaning of the statutory requirements, but application of the requirements.

¶ 12 In *KMC Leasing* we noted that there was "no single course of conduct by appellees alleged to have caused injury and it is impossible for claims to be based upon one legal theory as to all appellees." *KMC Leasing*, at ¶ 16, 9 P.3d at 689. We additionally noted that "facts that bear on liability will not be typical." *Id.* at ¶ 28, 9 P.3d at 692. We quoted authority stating that it "is often necessary to analyze the substantive claims and defenses of the parties and the essential elements of those claims and defense...." *Id.* at ¶ 30, 9 P.3d at 692, quoting *Davoll v. Webb*, 160 F.R.D. 142, 143 (D.Colo.1995), *aff'd*, 194 F.3d 1116 (10th Cir.1999).

¶ 13 The case before us is based upon the same alleged misrepresentation to all members of the class. Harvell is arguing that a "single course of conduct" by Goodyear caused injury. The question common to the class, *as alleged by Harvell*, is whether Goodyear misrepresented the true nature of the fee.[11] Liability, as alleged by Harvell, does not depend upon individualized agreements, but whether Goodyear misrepresented the true nature of the fee to the class as a whole.

¶ 14 Goodyear *alleges* that customers who viewed the pre-work estimates do not have, as a matter of substantive contract law, a cause of action. In other words, the pre-work viewing constitutes a legally material and different course of conduct. Whose side should the Court adopt ? At this stage, neither. The matter should be remanded to the trial court for further development. Instead, the Court adopts Goodyear's legal conclusions of Harvell's claims. But where in the Court's opinion is the analysis of the "essential elements" of Harvell's claim that is called for by *KMC Leasing* to determine whether Harvell's claim is typical?

¶ 15 In *Ysbrand* the Court declined to apply the law of fifty-one jurisdictions to a fraud and misrepresentation claim. *Ysbrand*, at ¶ 18, 81 P.3d at 627. In *Ysbrand* there is no indication of any request in the trial court to create subclasses. Harvell specifically requested in the trial court that subclasses be created if the trial court determined that the law of thirty-seven jurisdiction applies. But the trial court did not reach that request because it determined that the law of thirty-seven jurisdictions did not apply.

¶ 16 The Court's opinion remains silent on the issue of Harvell's opportunity to seek class certification with subclasses. However, it concludes that a class action involving thirty-seven jurisdictions may not proceed. The trial court has not determined whether subclasses would be manageable. Even when this Court exercises its broad reviewing powers in an equitable proceeding, it does not make first-instance findings of fact; and the Court allows the parties an opportunity to create a record of facts to support their legal theories.[12] Class certification issues may depend upon findings of fact made by the trial court.[13] A trial judge considers the evidence

11. *See, e.g., Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir.2003) (Exxon's argument that each breach of contract claim raised an individual issue was without merit because all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers, and the duty of good faith was an obligation that it owed to the dealers as a whole. Whether it breached that obligation was a question common to the class.).

12. *See, e.g., Nelson v. Pollay*, 1996 OK 142, 916 P.2d 1369, 1376 (generally, an appellate court will not make first-instance determinations of law or fact since that is the trial court's function in every case—whether in law, equity or on appeal from an administrative body); *Hedges v. Hedges*, 2002 OK 92, ¶ 23, 66 P.3d 364, 373 ("When reviewing an equity case, an appellate court cannot exercise first-instance cognizance by making original findings of fact.").

13. *See, e.g., Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715(1999) (in certain circumstances settling parties must present not only their agreement, but evidence on which the district court may rely to support required findings of fact where certification is sought of limited fund class action for purposes of settlement); *Walsh v. Ford Motor Co.*, 257 U.S.App.D.C. 85, 807 F.2d 1000, 1017–1018 (D.C.Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987) (class action proponents may not be called upon to prove their case in order to obtain certification, but they are required to tender some creditable basis, some evidence, that the proponents were subject to similar treatment by the defendant).

from both sides when making a certification ruling, and a ruling for class certification does not bind the trial court to rule for the plaintiff when adjudicating the ultimate merits of that issue. *In re Initial Public Offering Securities Litigation,* 471 F.3d 24, 39, 39 n. 9 (2d Cir.2006). Harvell's evidentiary position is that Goodyear's invoices show the terms of the contracts, even to those customers who viewed the estimates prior to service to their vehicles. In this appeal Goodyear must show an abuse of discretion [14] in the trial judge's certification ruling, and that showing must be based upon evidence in the record that Goodyear's contracts with its customers were something other than its invoices. Harvell and Goodyear should be provided with an opportunity to satisfy their respective burdens of persuasion and proof.

¶ 17 The choice of law for actions involving contracts has been legislatively determined for this jurisdiction. "A contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." 15 O.S.2001 § 162. Section 162 incorporates two well-known choice of law principles: the law of the place of performance (*lex loci solutionis*) and, when there is contractual silence on place of performance, the law of the place where the contract was created applies (*lex loci contractus*). *Panama Processes, S.A. v. Cities Service Co.,* 1990 OK 66, 796 P.2d 276, 287.

¶ 18 Federal courts have stated that a choice of law issue often arises within a Federal Rule 23 analysis when a court examines the alternate 23(b)(3) requirement of predominance of questions of law common to class members. Satisfaction of the commonality requirement will not decide the (b)(3) predominance requirement because a putative class may satisfy the commonality requirement of 23(a) and yet fail to satisfy the predominance requirement of 23(b)(3). *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Monreal v. Potter,* 367 F.3d 1224, 1237 (10th Cir.2004). A court ordinarily [15] will determine whether predominance of common questions of law outweighs the set of issues that separate the class.[16]

¶ 19 Section 2023 lists four nonexhaustive matters pertinent to this weighing or balancing,[17] the federal counterparts of which have been regarded in a variety of ways by federal courts. The calculus of this balancing or the assignment of values to the various factors is unique for each controversy because of the fact-specific nature of the court's determination of predominance. For example, there may be a controversy in which class resolution of one issue or a small group of them will so advance the litigation that they may fairly be said to predominate.[18] Although the predominance test is readily met in certain types of consumer cases,[19] choice of law considerations requiring the application of

**14.** *Shores v. First City Bank Corp.,* 1984 OK 67, ¶ 1, 689 P.2d 299, 300. In the context of class certification we have stated that an abuse of discretion occurs if the record fails to support the conclusion that the statutory prerequisites for class certification are met. *Ysbrand v. DaimlerChrysler Corp.,* 2003 OK 17, ¶ 5, 81 P.3d 618, 623, *cert. denied,* 542 U.S. 937, 124 S.Ct. 2907, 159 L.Ed.2d 812 (2004).

**15.** Whether a balancing determination of predominance is *always* appropriate for a class action we need not determine in this controversy. *But see, e.g.,* Romberg, *Half a Loaf is Predominant and Superior to None: Class Certification of Particular Issues Under Rule 23(c)(4)(A),* 2002 Utah L.Rev. 249, 280 (2002) ("the landscape for measuring predominance and superiority under Rule 23(b)(3) is fundamentally altered by Rule 23(c)(4)(a)").

**16.** *See, e.g.,* Hines, *The Dangerous Allure of the Issue Class Action,* 79 Ind. L.J. 567, 594 (2004)

("Rather, the predominance test demands a finding of supercommonality in the proposed class action. It requires careful assessment of the overall character of the class action, weighing the issues common to the class against the set of issues that separate the class.").

**17.** 12 O.S. § 2023 (B)(3)(a)-(d), inclusive, *supra,* at n. 1.

**18.** *In re School Asbestos Litigation,* 789 F.2d 996, 1010 (3d Cir.), *cert. denied sub nom. Celotex Corp. v. School District,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117, and *National Gypsum Co. v. School Dist. of Lancaster,* 479 U.S. 915, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986).

**19.** *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

varying legal standards, such as the laws of several states, *may* eclipse the common issues in a controversy and the putative class thus fail the predominance test.[20]

¶ 20 The choice of law in this controversy, 15 O.S.2001 § 162, the law of the place of performance, requires the trial court to examine the laws of all states of the putative multistate class where the contracts were performed.[21] We may not conclude in an *a priori* manner, as matter of law, that every putative class action brought in this jurisdiction based upon contract law will necessarily be incapable of class certification when various states' contract laws, via the *lex loci solutionis/contractus* choice of law, are applied to the controversy. The fact that laws of various states are applicable would not necessarily preclude a class action based upon principles of contract law. As one court observed, "The application of various state laws would not be a bar [to class certification] where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform." [22]

¶ 21 The trial court did not apply the appropriate *lex loci solutionis/contractus* choice of law required by 15 O.S. § 162. Generally, on an appeal this Court does not make first instance determinations on disputed questions of fact or law.[23] The predominance and superiority requirements of Rule 23(b)(3), our § 2023(B)(3), "were adopted to cover cases in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results ... [which] ... invite[] a close look at the case before it is accepted as a class action...." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 186 (3rd Cir.2001), quoting *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotations and citations omitted). The trial court has not made this determination using the appropriate legal standard.

¶ 22 Harvell argued in the trial court that Ohio law should be applied pursuant to the most significant relationship test from the Restatement (Second) of Conflict of Laws. We have rejected application of the Restatement. Harvell also argued that if Ohio law was not applied to the class as a whole then subclasses could be created.[24] Harvell ar-

---

**20.** *See, e.g., In re LifeUSA Holding Inc.,* 242 F.3d 136, 147 (3d Cir.2001) (the district court failed to consider how individualized choice of law analysis of the forty-eight different jurisdictions would impact on Rule 23's predominance requirement); *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 618 (3d Cir.1996) (predominance requirement of Rule 23(b) could not be met because the choice of law considerations eclipsed common issues in the case), *affirmed, Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689, (1997); *Spence v. Glock, Ges. m.b.H.,* 227 F.3d 308, 309–310 (5th Cir.2000) (because the district court erred in its choice of law analysis it abused its discretion on the issue of predominance under Rule 23(b)(3) and the order of certification was reversed); *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996) (the district court erred in its analysis when it failed to consider how variations in state law affect predominance and superiority); *In re Tri–State Crematory Litigation,* 215 F.R.D. 660, 695 n. 24 (N.D.Ga.2003); Ryan Patrick Phair, Comment, *Resolving the "Choice-of-Law Problem" in Rule 23(b)(3) Nationwide Class Actions,* 67 U. CHI. L. REV. 835 (2000). *But see, Jennings Oil Co., Inc. v. Mobil Oil Corp.,* 80 F.R.D. 124, 130 (S.D.N.Y.1978) (in a national class should the uniform release clause in contracts need to be resolved pursuant to state law the

validity of the release could be determined by individual application of state law).

**21.** In the alternative, if the contracts are silent on the places of performance the trial court would examine where the contracts were created. 15 O.S.2001 § 162.

**22.** *Collins v. International Dairy Queen, Inc.,* 168 F.R.D. 668, 676, (M.D.Ga.1996), modified on other grounds, 169 F.R.D. 690 (M.D.Ga.1997), and quoting *Kleiner v. First National Bank,* 97 F.R.D. 683, 694 (N.D.Ga.1983).

**23.** *Oklahoma Public Employees Ass'n v. Oklahoma Dept. of Central Services, supra, Martin v. Johnson, supra,* and *YWCA v. Melson, supra,* at n. 10.

**24.** O.R., Plaintiff's Submissions in Support of Class Certification, Vol. II, Part "D" Plaintiff's Choice of Law Analysis, pg. 583, 585 (Feb. 25, 2005). *See also* Plaintiff's Motion for Class Certification and Brief, O.R. 68, 83 ("Any problems created by the need to address individual issues may be resolved by certifying issue classes under Section 2023(C)(4)(a) or subclasses under Section 2023(C)(4)(b).").

gued that the differences in certain statutes of the various states were not barriers to a class action: "Differences can be briefed, and class members grouped into subclasses according to the elements of their state law." [25] Harvell argued that "these differences, if material, are few and uniform, allowing for easy grouping." [26]

¶ 23 Harvell mentions subclasses in her brief on appeal.[27] The Court determines on appeal *in the first instance* that the application of varying states' laws is not administratively manageable using the available § 2023 procedures, and *sub silentio* determines that § 2023(C)(4) subclasses are not appropriate for this controversy.[28] It does so by adopting Goodyear's characterization of the elements of Harvell's cause of action and concluding that customers who viewed pre-work estimates have a different *legal* claim than Harvell *such that Harvell's claim cannot be part of a class action.*

¶ 24 The Court utilizes Goodyear's argument that different statutes of limitations may exists in the law of the various jurisdictions. Some courts have rejected an attack upon a putative class based upon statutes of limitations for the reason that application of the defense goes to the merits of the cause of action.[29] On the other hand, some courts have stated that statutes of limitation should be considered when a court makes a class certification decision. *Waste Management Holdings, Inc. v. Mowbray,* 208 F.3d 288, 295–296 (1st Cir.2000). *When statutes of limitations affect different class members differently there is no per se rule requiring a denial of class certification.* For example, in *Waste Management Holdings, Inc. v. Mowbray,* the court stated the following.

Although a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3), we reject any per se rule that treats the presence of such issues as an automatic disqualifier. In other words, the mere fact that such concerns may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones. As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of statutes of limitations will not automatically foreclose class certification under Rule 23(b)(3). *See* 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.46[3], at 23–210 to –211 (3d ed.1999). Predominance under Rule 23(b)(3) cannot be reduced to a mechanical, single-issue test.

*Waste Management Holdings, Inc. v. Mowbray,* 208 F.3d at 296, (note omitted).

Should the trial court consider the varying statutes of limitation when deciding class certification? Yes, it should. Do varying statutes of limitation *require, by themselves,* that the trial court, as a matter of law, deny class certification? No, they do not.[30] Whether

---

**25.** *Id.* O.R., Plaintiff's Submissions in Support of Class Certification, Vol. II, Part "D" *supra,* note 24, at pg. 586.

**26.** O.R., Plaintiff's Submissions in Support of Class Certification, Vol. II, Part "D", *supra,* note 24, at pg. 586.

**27.** Harvell mentions § 2023(C) subclasses in her appellate brief for circumstances of factual variations between plaintiffs subject to the same conduct by the defendant and on the issue of predominance. Appellee's Answer Brief at 9 and 13.

**28.** Whether putative class members may be grouped according to the various states' contract laws for the purpose of various subclasses is a determination that is made in the first instance by a trial court. A trial court has no *sua sponte* burden to subclassify; it is a plaintiff's burden to designate an appropriate class. *Heaven v. Trust Co. Bank,* 118 F.3d 735, 738 (11th Cir.1997). In

*United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 1215, 63 L.Ed.2d 479 (1980), the Court explained that the burden is on the plaintiff for constructing subclasses and submitting proposals to the trial court. *Id.,* 445 U.S. at 408, 100 S.Ct. 1202.

**29.** *See, e.g., CV Reit, Inc. v. Levy,* 144 F.R.D. 690, 697 (S.D.Fla.1992) (rejecting argument that plaintiffs' claims were atypical based upon statute of limitations, reasoning that the argument was inappropriate for class certification); *Gruber v. Price Waterhouse,* 117 F.R.D. 75, 78–79 (E.D.Pa.1987) ("the statute of limitations defense goes to the merits of the plaintiffs' complaint and therefore is beyond the scope of a motion for class certification").

**30.** The potential individual questions raised by the application of varying statutes of limitations do not require, as a matter of law, the conclusion

the varying statutes of limitation destroy predominance or not, or are administratively manageable or not, or are appropriate for subclasses or not, are decisions for the trial court to make in the first instance after the parties present their respective positions in the context of the *lex loci solutionis/contractus* choice of law. This has not yet occurred in the trial court and the parties should be afforded an opportunity to present their positions.

¶ 25 In Harvell's class action, she argued for a Restatement (Second) significant-relationship test and produced citations to various statutes and opinions from other states. Harvell failed to show that an exception to *lex loci solutionis/contractus* choice of law of 15 O.S. § 162 applies, and her putative class requires application of the laws of various states. Harvell should be given an opportunity to show how those statutes and cases support her argument for a class or appropriate subclasses based upon the applicable requirements of § 2023, *e.g.*, commonality, typicality and, if necessary, predominance. Harvell has the burden to identify the applicable law of the various states, including its variations, upon which she bases her multistate claims. *Walsh v. Ford Motor Co.*, 257 U.S.App.D.C. 85, 807 F.2d 1000, 1017 (D.C.Cir.1986), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 677 (1987). Goodyear has already met its burden of showing that the laws of other jurisdictions apply, but Goodyear additionally argues that the laws of various jurisdictions conflict with each other and destroy commonality, typicality, and predominance. Goodyear's burden is to show that those laws are as Goodyear says they are and accomplish the legal result Goodyear says they do. Harvell should be provided an opportunity to show that the requirements of § 2023 are satisfied with that applicable law, and Goodyear should have the opportunity to challenge those claims.

¶ 26 A district court in Oklahoma shall take judicial notice of the common law, constitutions, and public statutes of other states. 12 O.S.2001 § 2201 (A).[31] That section "requires that judicial notice be taken of the common law, constitutions, and public statutes in force in every state, territory, and jurisdiction of the United States." 2 L. Whinery, *Oklahoma Evidence, Commentary on the Law of Evidence*, § 5.03, 64 (2d ed., 2000). The procedure for taking judicial notice is provided by *12 O.S.2001 § 2203*.[32] The court may consult and use any source of pertinent information, whether or not furnished by a party. *Panama Processes, S.A. v. Cities Service Co.*, 1990 OK 66, 796 P.2d 276, 294. While judicial notice may dispense with a certain form of proof, it does not dispense with the allocation of the burdens upon each party to argue the applicable law. *Lewis v. Sac and Fox Tribe of Oklahoma Housing Authority*, 1994 OK 20, 896 P.2d 503, 512–513, *cert. denied*, 516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995). We do not have a record before us showing that the litigants had an opportunity to satisfy their respective burdens.

that common issues of fact and law do not predominate. Instead, such questions should be addressed in the context of subclasses within the class action. One authority discussing the issue of varying statutes of limitations states that: "If the court finds that a class is appropriate, and that the conflict be resolved, it should do so by establishing subclasses, based upon appropriate description characterizations, to protect class members' interests and to facilitate management of the action." Conte, Alba, and Newberg, Herbert B., *Newberg on Class Actions*, § 7.31, pg. 89 (4th ed.2002).

**31.** 12 O.S.2001 § 2201 (A):

A. Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States.

**32.** 12 O.S.2001 § 2203:

§ 2203. Determining Propriety of Taking Judicial Notice

A. In determining the propriety of taking judicial notice of a matter:

1. The court may consult and use any source of pertinent information, whether or not furnished by a party; and

2. No exclusionary rule except a valid claim of privilege shall apply.

B. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the scope of the matter noticed.

In the absence of prior notification, the request may be made after judicial notice has been taken.

C. Judicial notice may be taken at any stage of the proceeding.

¶ 27 In *Patel v. OMH Medical Center, Inc.*, 1999 OK 33, 987 P.2d 1185, this Court stated that "When necessary finding of facts and conclusions of law are absent, the case must be remanded with directions that they be made by the trial court." *Id.* at n. 59, 987 P.2d at 1201. Harvell made a request for a determinations of class certification with sub-classes if the trial court determined that multi-jurisdiction law applied. The trial court did not make findings of fact and conclusions of law on Harvell's request because it determined that the law of several jurisdictions did not apply. Section 2023 gives plaintiffs an opportunity to show a class with subclasses.

¶ 28 Today, the Court correctly determines that the law of several jurisdictions applies, but it short-circuits Harvell's request for subclasses in the District Court by concluding that Harvell's class action may not be maintained. The Court's opinion accomplishes this by placing a burden upon plaintiffs to provide a public-policy reason for exempting out of the *lex loci solutionis/contractus* rule of law and then concluding that this burden was not satisfied. I agree that the plaintiff must satisfy the burden of showing that *lex loci solutionis/contractus* does not apply. However, in this case both parties and the trial court construed our prior case-law as abrogating *lex loci solutionis/contractus* rule, and neither party nor the trial court understood the nature of plaintiff's burden. Their incorrect understanding on the legal issue is reasonable given the nature of some of this Court's prior statements on this issue. For example, in *Bohannan v. Allstate Ins. Co.*, 1991 OK 64, 820 P.2d 787, the Court stated that "The reasons stated in *Brickner[v. Gooden*, 525 P.2d 632 (Okl.1974) ] for abandoning and rejecting the *lex loci delictus* rule in tort law *are equally* compelling for abandoning and rejecting the lex loci contractus rule in contract law." *Id.* 820 P.2d at 795, emphasis added. When changes in the law occur, whether by this Court or the Legislature, and the parties and trial court did not have the benefit of this Court's opinion or the new statute, the Court has remanded the matter to the trial court for application of the correct rule of law. *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 2000 OK 55, ¶ 56, 11 P.3d 162, 182; *Self Insurers' Management Group v. YWCA of Oklahoma City*, 1997 OK 95, 954 P.2d 115, 120. The lack of opportunity to present their respective positions was due, in part, to this Court's previous announcements. Remanding the matter for the litigants to make their arguments with the correct legal standard is simply a question of fairness in providing the litigants with an opportunity to present their case.

¶ 29 Finally, I must note that the relief I suggest as proper for this controversy has been given by the U.S. Supreme Court. In *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Court sustained the petitioner's claim and reversed the lower court based upon its improper selection of the applicable choice of law, *Id.* 472 U.S. at 822–823, 105 S.Ct. 2965; but reversal on choice of law did not foreclose a determination by the lower court upon remand whether a class action could proceed pursuant to the appropriate choice of law. Our opinion here should follow the example of both the U.S. Supreme Court and this Court's prior opinions, and refrain from deciding the class action issue until Harvell has been provided with an opportunity to present facts and law in support of her quest for class certification with sub-classes upon remand in accordance with the *lex loci solutionis/contractus* standard.[33]

---

**33.** Whether putative class members may be grouped according to varying methods for determining damages with the creation of subclasses, as opposed to administrative groups within a particular class, is a determination that is made in the first instance by a trial court. A trial court has no *sua sponte* burden to subclassify; it is a plaintiff's burden to designate an appropriate class. *Heaven v. Trust Co. Bank*, 118 F.3d 735, 738 (11th Cir.1997). In *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S.Ct. 1202, 1215, 63 L.Ed.2d 479 (1980), the Court explained that the burden is on the plaintiff for constructing subclasses and submitting proposals